**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF<br><br>Duan C. Copeland, et al.,<br><br>               Debtors.<br><hr>Diane M. Mann,<br><br>               Appellant,<br>vs.<br>Duan C. Copeland, et al.,<br><br>               Appellees. | No. CV-18-03311-PHX-SPL<br><br>BK No. 2:14-bk-10119-MCW<br><br>**ORDER** |

Trustee Diane M. Mann ("Appellant") appeals the denial of a motion to compel the turnover of estate property in the underlying bankruptcy case, *In re Copeland* 2:14-bk-10119-MCW. (Doc. 3) Appellant seeks a reversal of the bankruptcy court's order and a mandate for the bankruptcy court to consider the motion on the merits without regard to the Ninth Circuit Bankruptcy Appellate Panel's ("BAP") decision in *In re Markosian*, 506 B.R. 273 (B.A.P. 9th Cir. 2014). For the following reasons, this Court vacates the bankruptcy court's order and remands for consideration of the motion to compel consistent with this Order.

**I.    Background**

In reviewing the bankruptcy court's findings of fact, "[t]his court must accept the

bankruptcy court's findings of fact unless, upon review, the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009) (internal citation omitted). Appellant contends that there are no issues of fact to be decided in this appeal, however, Appellant and Dr. Duan C. Copeland and Lily E. Copeland ("Appellees") recite different facts in their appellate briefing. (Docs. 3 and 7) For example, Appellant asserts that the vehicles at issue in this appeal were all acquired by Appellees while in a Chapter 11 case.[1] (Doc. 3 at 5) Yet Appellees assert that at least some of the vehicles were purchased prior to their conversion from Chapter 7 to Chapter 11. (Doc. 7 at 13-14) In the order denying the motion to compel, the facts are not clear regarding when Appellees acquired their vehicles. (Doc. 4-9 at 1-2) Therefore, this Court has searched the record on appeal and compiled the facts as represented by the parties' in their past filings in the bankruptcy court.

Appellees filed for a voluntary Chapter 7 bankruptcy on June 30, 2014. (Doc. 4-1 at 1) In their petition, Appellees listed one vehicle, a 2008 Nissan Rogue, as part of their personal property. (Doc. 4-1 at 8) While in Chapter 7, Appellees traded the Nissan Rogue and purchased a 2007 Porsche Cayman using income Appellees received from Dr. Copeland's job. (Doc. 4-10 at 22-23) Appellees then traded the Porsche Cayman for a 2006 Lexus GX470 and also purchased a 2010 Kawaski Z-1000 motorcycle, again using post-petition income received from Dr. Copeland's job. (Docs. 4-10 at 22-23; 4-7 at 1-2) In September 2015, Appellees converted from Chapter 7 to Chapter 11. (Doc. 4-9 at 1) Subsequently, Appellees purchased a 2014 Nissan Leaf. (Doc. 4-7 at 2) In July 2017, Appellees reconverted back to Chapter 7. (Doc. 4-9 at 1)

On January 26, 2018, Appellant filed a motion to compel Appellees to turn over the Lexus GX470, Kawaski Z-1000, and Nissan Leaf as property belonging to the bankruptcy estate pursuant to 11 U.S.C. § 521[2] of the Code. (Doc. 4-6 at 1) Appellees objected, arguing

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code (the "Code").

[2] 11 U.S.C. § 521(a) outlines the duties of a debtor to cooperate with the trustee when

2

that they purchased the vehicles with post-petition earnings, and therefore, the vehicles did not become part of the Chapter 7 bankruptcy estate upon reconversion to Chapter 7 pursuant to 11 U.S.C. § 541.[3] (Doc. 4-7 at 1-2)

On September 28, 2018, the bankruptcy court denied Appellant's motion to compel. (Doc. 4-9) In denying the motion, the bankruptcy court stated that the BAP's decision in *Markosian* was controlling. (Doc. 4-9 at 4) Specifically, the bankruptcy court stated that it would follow the BAP's decisions, unless "[the] Court conclude[d] that a [BAP] decision clearly misinterpreted the Code or other law and so long as the District Court of Arizona ha[d] not published a contrary opinion." (Doc. 4-9 at 4) On October 12, 2018, Appellant timely filed a notice of appeal and elected to have the appeal transferred to this Court. (Doc. 1 at 1)

Appellant raises two issues on appeal. First, Appellant argues that the bankruptcy court committed reversible error by denying the motion to compel. (Doc. 3 at 4) Second, Appellant argues that the ruling in *Markosian* is erroneous. (Doc. 3 at 4) Appellant requests that this Court reverse the bankruptcy court's order and direct the bankruptcy court to consider the motion to compel on the merits without regard to *Markosian*. (Doc. 3 at 9)

**II. Discussion**

**A. Standard of Review**

District courts have jurisdiction to review an appeal from the bankruptcy court's "final judgments, orders, and decrees." 28 U.S.C. § 158. This court reviews the bankruptcy court's legal conclusions *de novo*. *See In re D'Arco*, 587 B.R. 722, 726 (Bankr. C.D. Cal. 2018) (internal citation omitted).

---

disclosing his or her assets and liabilities.

[3] 11 U.S.C. § 541(a) states that the Chapter 7 bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case . . . except such as are earnings from services performed by an individual debtor after the commencement of this case."

3

## B. The Bankruptcy Court Did Not Commit Reversible Error

Appellant argues that the bankruptcy court committed reversible error by relying on the flawed holding in *Markosian* when denying the motion to compel. (Doc. 3 at 8-9) In response, Appellees argue that the holding in *Markosian* was an accurate interpretation of the statute governing conversions of cases from one chapter to another, 11 U.S.C. § 348(a),[4] and therefore, the bankruptcy court made no error in relying on *Markosian*. (Doc. 7 at 15-17)

Where there is a clear split between courts on an issue, it cannot be said that a bankruptcy court commits a reversible error by choosing to follow the view adopted within its own circuit rather than the view of another circuit. Indeed, courts in the Ninth Circuit generally adhere to the belief that Ninth Circuit BAP decisions should be given deference absent any other controlling authority. *See In re Muskin, Inc.*, 151 B.R. 252, 253-55 (Bankr. N.D. Cal. 1993); *see also In re Sawicki*, No. 2-07-bk-3493-CGC, 2008 WL 410229, at *4 (Bankr. D. Ariz. Feb. 12, 2008). Therefore, the bankruptcy court did not commit reversible error by relying on *Markosian*.

## C. The Ruling in *Markosian* is Erroneous

Appellant argues that the BAP erred in *Markosian* by concluding that § 348(a) authorizes the recharacterization of post-petition personal service income upon a debtor's conversion from a Chapter 11 to Chapter 7 case from property included in the Chapter 11 bankruptcy estate[5] to property not included in the Chapter 7 bankruptcy estate. (Doc. 3 at 6-8). Appellant instead requests that this Court adopt the interpretation of § 348(a) as outlined in *In re Meier*, 550 B.R. 384 (N.D. Ill. 2016).

---

[4] 11 U.S.C. § 348(a) states that the conversion of a case from one chapter of the Code to another chapter "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."

[5] 11 U.S.C. § 1115(a)(2) states that income from any personal services rendered by the debtor after the commencement of the bankruptcy case is included in a Chapter 11 bankruptcy estate.

4

In response, Appellees argue that the bankruptcy court correctly relied on *Markosian* when denying Appellant's motion to compel. (Doc. 7 at 15-17) Specifically, Appellees contend that the language in § 348(a) allows a debtor's non-exempt, post-petition personal service income that is part of a Chapter 11 bankruptcy estate to revert back to the debtor upon conversion of the Chapter 11 to Chapter 7. (Doc. 7 at 11-12)

Although the bankruptcy court did not commit reversible error by relying on *Markosian*, this Court nevertheless finds that the ruling in *Markosian* is an erroneous interpretation of § 348(a). *See Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) ("BAP decisions cannot bind the district courts themselves[] . . . [because] [a]s article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction."). Therefore, the bankruptcy court should not rely on *Markosian* when making a determination in this case.

### 1. Previous Cases Interpreting § 348(a)

Similar to the facts here, in *Markosian*, the debtors filed a Chapter 7 petition, converted to Chapter 11, and then reconverted to Chapter 7. *Markosian*, 506 B.R. at 274. While in Chapter 11, one of the debtors earned over $100,000 for rendering personal services. *Id.* However, the debtor did not receive payment of the money from his employer until after the case was reconverted back to Chapter 7. *Id.* The debtors filed a motion to determine whether the money was a part of the Chapter 11 estate, and if so, whether the money became part of the Chapter 7 estate upon reconversion. *Id.* The debtors argued that the money was post-petition earnings from personal services and therefore should not be included in a Chapter 7 estate. *Id.* at 275. Citing *In re Evans*, 464 B.R. 429 (Bankr. D. Colo. 2011), the bankruptcy court agreed with the debtors and determined that, although the money was earned during Chapter 11, the money was not included in the Chapter 7 estate upon reconversion—thereby allowing the debtor to keep the money. *Id.*

The trustee appealed. *Id.* The Ninth Circuit BAP analyzed the plain language and legislative history of § 348—the statute governing converted bankruptcy cases—and affirmed the bankruptcy court. *Id.* at 227. The BAP explained that post-petition personal

service income is included in a Chapter 13 bankruptcy estate, but § 348(f) explicitly allowed for a debtor to exclude the income from the Chapter 7 bankruptcy estate when a case is converted from Chapter 13 to Chapter 7. *Id.* at 276. The BAP reasoned that "there is no reason to treat chapter 11 debtors differently than chapter 13 debtors," and the general language of § 348(a) should net the same result when a debtor converts from Chapter 11 to Chapter 7. *Id.* at 277. Additionally, the BAP found that § 348(f) was enacted in 1994 for the limited purpose of resolving a split in the circuits regarding Chapter 13 filings. *Id.* The BAP maintained that § 1115 did not exist in 1994, so there was no need for Congress to enact a parallel provision governing post-petition personal service income for Chapter 11 cases. *Id.* The BAP reasoned that any other reading of § 348(a) would render the provision meaningless. *Id.*

The Northern District of Illinois came to the opposite conclusion in *Meier*. *Meier*, 550 B.R. at 384. There, the debtor originally filed a Chapter 11 petition. *Id.* at 385. The debtor continued working throughout the proceedings and deposited his income into a personal, "debtor in possession" account. *Id.* When he was unable to confirm a plan under Chapter 11, the debtor converted the case to Chapter 7. *Id.* A creditor then motioned the bankruptcy court to require the debtor to turn over the money in his personal account. *Id.* The debtor argued that the money was not a part of the Chapter 7 bankruptcy estate because he earned the money as post-petition personal service income after originally filing the Chapter 11 petition. *Id.* The bankruptcy court ordered the debtor to turn over the funds as a part of the Chapter 7 estate, and the debtor appealed. *Id.* The district court affirmed the bankruptcy court's ruling. *Id.*

The district court reasoned that the 1994 amendments to the Code explicitly added § 348(f), which allowed for post-petition personal service income to revert from non-exempt property of a Chapter 13 estate to the debtor's property of a Chapter 7 estate upon conversion from Chapter 13 to Chapter 7. *Id.* at 388. However, the district court determined that nothing in the statutory amendments allowed for the same result to happen when a debtor converted from Chapter 11 to Chapter 7. *Id.* at 390. The district court further

determined that the subsequent 2005 Code amendments did not support an interpretation allowing such a result under § 348(a) because "Congress certainly had Chapter 12 in mind when enacting § 348(f) in 1994 and had the opportunity to include Chapter 12 and Chapter 11 when it revised § 348(f) in 2005[,] [b]ut, in both instances, Congress limited the reach of § 348(f) to Chapter 13 cases." *Id.* at 387.

Since *Markosian*, courts have generally followed the rationale in *Meier*; however, courts acknowledge that the language of § 348(a) and the related statutes governing the bankruptcy estate are ambiguous. *See e.g.*, *In re Freeman*, 527 B.R. 780, 792-93 (Bankr. N.D. Ga. 2015) ("[T]he Court observes that the statutes are clearly ambiguous as, reading Sections 541(a), 1115(a)(2), and 348(a) together, it is unclear whether post-petition pre-conversion earnings are included in a post-conversion Chapter 7 estate.").

### 2. Statutory Interpretation of the Code

It is fundamental that "[t]he starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). "Where there can be more than one reasonable interpretation, the courts are left to determine the statute's meaning by looking to the legislative history and employing the other canons of statutory construction." *Freeman*, 527 B.R. at 793 (internal citation and quotations omitted). One such canon of interpretation includes the reasoning that, unless the legislative history shows otherwise, it is generally presumed that Congress acted intentionally when including particular language in one section of a statute but omitting it in another section. *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 537 (1994) (internal citation omitted). When "competing interpretations of the legislative history make it difficult to say with assurance whether [either interpretation] lays better historical claim to the congressional intent[,]" then the presumption that Congress acted intentionally should control. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 541 (2004).

In 1994, Congress added § 384(f), which allowed post-petition personal service income that was property of the Chapter 13 estate[6] to become property of the debtor after conversion to Chapter 7. *See Freeman*, 527 B.R. at 793-94 (quoting the House Report concerning the enactment of § 348(f)). In 2005, Congress also added § 1115(a)(2), which made post-petition personal service income part of the bankruptcy estate in Chapter 11 cases. *Id.* at 795 (examining the legislative amendments within the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005).

Appellees assert that there is no justification for treating a Chapter 11 to Chapter 7 conversion any differently than a Chapter 13 to Chapter 7 conversion. (Doc. 7 at 15-17) But an express goal of the Code is to encourage voluntary repayment by individual debtors *through Chapter 13*. *See In re Bobroff*, 766 F.2d 797, 803 (3d Cir. 1985). Chapter 13 is favored for individual debtors over Chapter 11 because individual Chapter 11 cases serve to occupy the niche space "between business and [more sophisticated] consumer cases." Mark G. Stingley et al.*, Chapter 11 Conversion Conundrum*, 36 Am. Bankr. Inst. J., Aug. 2017, at 14-15, 65-66. The court in *Meier* recognized that Congress had a chance to include a special rule regarding post-petition personal service income within the context of Chapter 11 and Chapter 12 cases, but Congress chose not to do so. *Meier*, 550 B.R. at 388-90.

Appellees argue that interpreting § 348(a) as other circuits do would render the subsection meaningless. (Doc. 7 at 12) This Court does not agree. *See In re Lybrook*, 951 F.2d 136, 137 (7th Cir. 1991) (noting that § 348(a) "assures the continuity of the case for purposes of filing fees, preferences, statutes of limitations, and so forth") (superseded by statute on other grounds). It is important to note that since *Markosian*, no court has followed its interpretation of § 348(a).[7] *See Meier*, 550 B.R. at 385-90; *In re Laforce*, 593 B.R. 853, 859 (Bankr. S.D. Ala. 2018); *In re Gorniak*, 549 B.R. 721, 724-25 (Bankr. W.D.

---

[6] 11 U.S.C. § 1306 states that property of the Chapter 13 bankruptcy estate includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted."

[7] Likewise, no court has followed the reasoning from *Evans,* 464 B.R. at 429.

Wis. 2016); *In re Schichtel*, 556 B.R. 90, 91-94 (Bankr. W.D.N.Y. 2016); *Freeman*, 527 B.R. 789-97; *In re Lincoln*, No. 16-12650, 2017 WL 535259, at *3 (Bankr. E.D. La. Feb. 8, 2017); *In re Vilaro Colón*, No. 13-05545 EAG, 2016 WL 5819783, at *2-4 (Bankr. D.P.R. Oct. 5, 2016).

Most compelling, though, is the fact that § 348(a) does not have the same safeguards against bad faith conversions as § 348(f).[8] If debtors in a Chapter 11 case use all of their post-petition personal service income to buy items and attempt to convert to Chapter 7 just to keep the newly acquired items, then at a certain point the bankruptcy court should have the ability to punish the debtor for engaging in bad faith acts. Under the reasoning of *Markosian*, § 348(a) does not give the bankruptcy court that safeguard, and a debtor has nearly unfettered ability to spend post-petition earnings and shield themselves by simply converting to Chapter 7. Such waste is contrary to the goals of bankruptcy. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) ("The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.") (internal citation and quotations omitted).

### III. Conclusion

For the foregoing reasons, the Court concludes that *Markosian* is an erroneous interpretation of § 348(a), and any post-petition personal service income earned by a Chapter 11 debtor prior to his or her conversion to Chapter 7 constitutes property of the Chapter 7 bankruptcy estate. *See In re Meruelo Maddux Prop., Inc.*, 667 F.3d 1072, 1077 (9th Cir. 2012) ("Whatever the merits of a non-literal approach [in statutory interpretation], we conclude that this is not one of those 'rare cases.' We presume that Congress said what it meant in the language it drafted.") (internal citation omitted). Therefore, the bankruptcy court's order will be vacated and remanded for consideration consistent with this decision.

---

[8] Section 348(f)(2) states, "[i]f the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion."

Both parties cite to the unique facts of this case in that the case was originally filed as Chapter 7, then Chapter 11, and back to Chapter 7. (Docs. 7 at 17-18; 8 at 5) Neither party, however, concludes what affect, if any, this fact has on the bankruptcy estate. The record shows that at least one vehicle was purchased while Appellees were in Chapter 11. (Doc. 4-7 at 2) Yet it is unclear if the vehicle was purchased with money earned while Appellees were in Chapter 7 or Chapter 11. Therefore, the bankruptcy court is in the best position to decide the characterization of the disputed vehicles.[9]

Accordingly,

**IT IS ORDERED** that Appellant's appeal is **granted** as follows:

1. The Bankruptcy Court's order denying the motion to compel is **vacated**; and

2. This case shall be **remanded** to the Bankruptcy Court for proceedings consistent with this Order.

Dated this 21st day of October, 2019.

Honorable Steven P. Logan
United States District Judge

---

[9] In that regard, *Freeman* may serve as a relevant guidepost. There, the debtor earned personal service income and severance income at various points in his bankruptcy case, and the bankruptcy court determined certain monies became property of the estate upon conversion while other monies remained property belonging to the debtor upon conversion. *Freeman*, 527 B.R. at 782, 798.